**William FRANKLIN, Petitioner–Appellant,**

v.

**Jerry D. GILMORE, Respondent–Appellee.**

No. 98–2338.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 20, 1998.

Decided Aug. 18, 1999.

Rehearing Denied Sept. 22, 1999.

Joshua Sachs (argued), Sachs & Drake, Morton Grove, IL; Larry Carlson (argued), Chicago, IL, for Petitioner–Appellant.

Deborah L. Ahlstrand, Office of the Attorney General, Civil Appeals Division, Chicago, IL; Renee G. Goldfarb, William D. Carroll (argued), Office of the State's Attorney of Cook County, Criminal Appeals Division, Chicago, IL, for Respondent–Appellee.

Before BAUER, EASTERBROOK, and KANNE, Circuit Judges.

BAUER, Circuit Judge.

An Illinois jury convicted William Franklin for the murder of Elgin Evans. That same jury found Franklin eligible for the death penalty and sentenced him to death after concluding that there were no mitigating factors sufficient to preclude a sentence of death. Franklin unsuccessfully challenged that conviction on appeal to the Illinois Supreme Court. He then filed a petition for collateral relief under the Illinois Post Conviction Hearing Act, 725 ILCS 5/122–1 *et seq.*, which he also pursued at the trial court and the Illinois Supreme Court. After those efforts bore no fruit, Franklin turned to the federal district court for relief. The district court denied his petition for a writ of habeas corpus, and now Franklin is before us. We affirm the district court's decision to deny the writ.

## I. BACKGROUND

On February 6, 1980, the body of Elgin Evans, Jr. ("Evans" or the "victim") was discovered in the vicinity of the Ford Motor Company plant in Chicago Heights, Illinois. Evans had been shot once in the right side of his head and once in the left side of his chest. A pathologist testifying at Franklin's trial concluded that the cause

of Evans' death was multiple gunshot wounds.

Mose Evans ("Mose"), the victim's grandfather, testified at trial that on the morning of February 6, 1980, he saw Evans enter a dirty grey or blue four-door automobile near the intersection of 16th and Hanover Streets in Chicago Heights. He also testified that on January 27, 1982, two police officers questioned him and showed him an array of photographs from which he identified Franklin as the driver of the car he saw his grandson enter on February 6. On cross-examination, Mose stated that he saw the front of the driver's face, but cautioned that it was for "[n]o more than a second." At a preliminary hearing, however, Mose stated that he saw only the side of the driver's face and the back of his head.

Ulric Williams testified that on the morning of February 6, 1980, he was at the home of Marion Holmes when Franklin drove up in a grey four-door Ford LTD. Franklin got out of the car and told Williams, who was working on Holmes' car, that Evans was in the front passenger seat of his car. Williams had never met Evans. Franklin then went into Holmes' house to speak with Holmes while Williams remained outside. Franklin and Holmes emerged from the house a few minutes later and told Williams that they all were going for a ride in Franklin's car. Williams drove Franklin's car, Holmes sat next to Williams, and Franklin sat in the backseat with Evans.

Holmes directed Williams to drive to an area near the Ford Motor Company plant in Chicago Heights. Holmes instructed Williams to stop the car and told him to stay in the car because "[w]e don't need you for this." Franklin and Holmes got out of the car and then asked Evans to give them a hand with some objects that were located in the trunk of the car. Williams believed that the three men were going to dispose of some stolen auto parts and that he was to act as a lookout.

While the three men were standing at the rear of the car, Williams looked into the rearview mirror and saw Franklin pull a small pistol from his jacket and shoot Evans in the head. Williams saw Franklin bend over Evans; Williams then heard another gunshot. Franklin and Holmes returned to the car and instructed Williams to drive away. Upon approaching the Calumet Sag Channel, Franklin told Williams to stop the car. Franklin wiped off the pistol and threw it into the channel. The three men then went to their respective homes.

In November 1981, Williams was taken into custody in Lake County, Indiana. While there, Williams learned that Holmes was in the same facility and that Holmes was planning to kill him. Williams then told the authorities about the Evans murder. Williams spoke with agents James Collier and Tom Pritchett of the Illinois Department of Law Enforcement five or six times between November 1981 and January 1982.

Williams agreed to plead guilty to an armed robbery charge, to testify truthfully against both Franklin and Holmes regarding the murder of Evans, and to testify against Holmes in another matter. In return, the state agreed to recommend a six-year sentence on the armed robbery charge and to arrange to have Williams' family relocated. After serving three years of imprisonment on the armed robbery sentence, Williams was paroled and relocated with his family.

Williams testified that the state made no promises of leniency with respect to Evans' murder. He testified that he was charged for that murder, but that after the preliminary hearing, the circuit court found that there was no probable cause to charge him. Williams also testified that he had three prior felony convictions.

Agent Collier testified that he and Agent Pritchett met with Williams on several occasions between November 1981 and January 1982. Agent Collier also testified that he conducted a photo lineup at

Mose's home in January 1982, and that Mose identified Franklin as the driver of the car that his grandson entered on the morning of February 6, 1980.

Following the state's case-in-chief, Franklin rested without presenting any evidence. The jury found Franklin guilty of the murder of Evans. Following the conviction, the state requested a hearing to determine whether the death penalty should be imposed. At the sentencing hearing, the same jury found the existence of significant aggravating factors that made Franklin eligible for the death penalty. For example, the state showed that in December 1982, Franklin was convicted and sentenced to a term of 100 to 300 years of imprisonment for the 1976 murder of James Roland. Next, the state presented evidence that in 1965, Franklin pled guilty to the possession of a narcotic drug and was sentenced to three years of probation. Finally, the state presented evidence that, in 1965, Franklin pled guilty to a bank robbery and was sentenced to 15 years of imprisonment, but was released after serving only five years.

In mitigation, Franklin had seven of his children testify that they had completed high school, were employed, and that Franklin had been a positive role model in their lives. After considering all the evidence submitted as aggravating and mitigating factors, the jury found that there were no mitigating factors sufficient to preclude the imposition of the death penalty.

Franklin appealed his conviction and sentence directly to the Illinois Supreme Court, which affirmed both the conviction and the sentence. *See People v. Franklin*, 135 Ill.2d 78, 142 Ill.Dec. 152, 552 N.E.2d 743 (1990) (*"Franklin I"*). Franklin's petition for rehearing was denied, as was his ensuing petition to the United States Supreme Court for a writ of certiorari. Franklin sought collateral relief under the Illinois Post Conviction Hearing Act, 725 ILCS 5/122–1 *et seq.*, but the circuit court and the Illinois Supreme Court denied his

request for relief. *See People v. Franklin*, 167 Ill.2d 1, 212 Ill.Dec. 153, 656 N.E.2d 750 (1995) (*"Franklin II"*). The federal district court similarly denied his petition for a writ of habeas corpus, and now Franklin is before us. On appeal to this Court, Franklin argues that: (1) the district court improperly refused to adjudicate the merits of his due process claims on the grounds that they had been procedurally defaulted; (2) he was denied effective assistance of counsel in the state trial court proceedings; and (3) the state court trial judge inaccurately instructed the jury at sentencing, in violation of his Eighth and Fourteenth Amendment rights.

## II. Discussion

### A. Procedural Default

A petitioner may seek federal habeas corpus relief only if he has exhausted all available state court remedies and, in doing so, has fairly presented his constitutional claims to the state's courts. *Moment–El v. DeTella*, 118 F.3d 535, 538 (7th Cir.1997). State law controls whether a claim is forfeited for the purposes of habeas relief. *Hogan v. McBride*, 74 F.3d 144, 146 (7th Cir.1996). In other words, whether the petitioner has procedurally forfeited any of his habeas claims depends on whether he has failed to present a claim at the time and in the way required by state law. *Id.*

We will not review a question of federal law decided by a state court if that decision rests on state law grounds that are independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The independent and adequate state ground doctrine applies to "bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729–30, 111 S.Ct. 2546. That is because "[f]ederal habeas relief is available only when a peti-

tioner has given the state courts a full and fair opportunity to review a claim, when there is cause and prejudice for the failure to raise the claim in state court, or when the default would lead to a fundamental miscarriage of justice." *Patrasso v. Nelson,* 121 F.3d 297, 301 (7th Cir.1997) (internal citations and quotations omitted). State court decisions are not adequate to bar federal habeas review unless they rest upon firmly established and regularly followed state practice. *James v. Kentucky,* 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984). Additionally, the state rule at issue "must have been 'firmly established and regularly followed' by the time as of which it is to be applied." *Ford v. Georgia,* 498 U.S. 411, 424, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (internal citations omitted).

■ Franklin's first contention is that the district court improperly refused to adjudicate the merits of his due process claims on the grounds that he forfeited those claims by procedural default. Specifically, Franklin contends that the district court erred in finding that his habeas claim was procedurally defaulted based on the adequate and independent Illinois law grounds because: (1) the Illinois courts did not follow a "firmly established and regularly followed" state procedure; and (2) his counsel on direct appeal was ineffective for failing to raise the due process claims. We review these claims *de novo.*

Had he been allowed to present his due process claims, Franklin asserts that he could have proven that: (1) the state falsely portrayed Williams as a mere witness in the Evans murder, rather than the accomplice Franklin claims he was; and (2) the state failed to disclose to the jury the existence of an unspoken agreement that the state would not prosecute Williams for the murder of Evans in exchange for his testimony against Franklin. Franklin did not advance these due process claims on direct appeal to the Illinois Supreme Court; instead, he raised them for the first time in his post-conviction review pe-

tition. That delay proved costly—the Illinois Supreme Court ruled that Franklin had forfeited the claims by failing to raise them on direct review. *See Franklin II,* 212 Ill.Dec. 153, 656 N.E.2d at 756.

In Franklin's habeas petition to the federal district court, he argued that he was not procedurally barred from bringing his due process claims in federal court. He contended that the Illinois Supreme Court's determination that he forfeited his due process claims was erroneous because its decision was not based on "firmly established and regularly followed" state law.

Specifically, in *Franklin II,* Franklin argued that his due process claims were supported by evidence that was outside the record on appeal and, therefore, he could not have raised these issues on his direct appeal to the Illinois Supreme Court. Franklin relies on: (1) a 59–page statement Williams made to the Will County authorities; and (2) a transcript of Williams' and Holmes' preliminary hearing on a charge unrelated to the Evans murder. He claims that Illinois Supreme Court Rule 329, which allows for supplementation of the record on appeal, permits him to introduce these documents on postconviction appeal.

Rule 329 states, in relevant part:

The record on appeal shall be taken as true and correct unless shown to be otherwise and corrected in a manner permitted by this rule. Material omissions or inaccuracies or improper authentication may be corrected by stipulation of the parties or by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court or a judge thereof.

87 Ill.2d R. 329.

In the district court, Franklin disputed whether firmly established Illinois law at the time of his appeal prohibited him from supplementing the record pursuant to Rule 329 in his postconviction appeal. In effect, Franklin is attempting to circumvent Illi-

nois forfeiture precedent by stretching Rule 329 beyond its intended purpose. This we will not do.

"Forfeiture under § 2254 is a question of a state's internal law: failure to present a claim at the time, and in the way, required by the state is an independent state ground of decision, barring review in federal court." *Patrasso*, 121 F.3d at 301. In *People v. Moore*, 177 Ill.2d 421, 226 Ill.Dec. 804, 686 N.E.2d 587 (1997), the Illinois Supreme Court explained:

> A post-conviction proceeding is a collateral attack upon a final judgment and the scope of post-conviction review is limited to issues which have not been, and could not have been, previously adjudicated. In a post-conviction proceeding, the determinations of the reviewing court on the prior direct appeal are *res judicata* as to issues actually decided and issues that could have been presented on direct appeal, but were not, are deemed waived.

*Id.*, 686 N.E.2d at 591 (internal citations and quotations omitted). Here, we find that Franklin forfeited this issue by failing to raise it on direct appeal. The record shows that, during his trial, Franklin had access to both the 59–page Will County statement and the transcript of Williams' and Holmes' joint-preliminary hearing testimony. In fact, his attorney even attempted to question and impeach Williams with both documents, but neither document ever was made a trial exhibit, published to the jury, or entered in the record. Nevertheless, Franklin argued in his post-conviction appeal, as he does before this Court, that the absence of those documents from the record before the Illinois Supreme Court prevented him from asserting his due process claim on direct appeal. Hence, he contended, as he does now, that his later post-conviction proceeding was the appropriate forum in which to raise the due process issues and Rule 329 was the appropriate vehicle by which to enter the documents into evidence.

In his post-conviction appeal, Franklin attempted to supplement the record by way of Rule 329 with the Will County statement and the joint-preliminary hearing testimony. Rule 329, however, addresses a party's ability to add material to the record under specific limited circumstances. *See, e.g., People v. Miller*, 190 Ill.App.3d 981, 138 Ill.Dec. 771, 548 N.E.2d 1, 6 (1989). The rule, however, does not create a vehicle for parties to raise issues that they should have raised in the trial court or on direct appeal. Here, we find that Franklin's due process claims are controlled by Illinois forfeiture principles and not by Rule 329. Accordingly, Franklin's due process claims are forfeited and, therefore, are procedurally barred unless he can show: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ Franklin asserts that the ineffective assistance of appellate counsel provides the cause for his failure to raise his due process claims on direct appeal and for his failure to supplement the trial record. Specifically, Franklin contends that his appellate counsel's failure to raise his due process claims and supplement the record pursuant to Rule 329 on direct appeal is of such significant magnitude that it excuses procedural default in federal habeas.

■ Attorney error that constitutes ineffective assistance of counsel is cause to set aside a procedural default. *Coleman*, 501 U.S. at 753–54, 111 S.Ct. 2546; *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir.1994). When assessing whether a defendant's counsel was so ineffective as to constitute cause for a procedural default, we apply the test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Coleman*, 501 U.S. at 752, 111 S.Ct. 2546. Therefore, to make a showing sufficient to establish cause for his procedural default, Franklin must demonstrate that: (1) his counsel's

performance was so deficient as to fall below an objective standard of reasonableness under "prevailing professional norms"; and (2) that the deficient performance so prejudiced the defense as to deny the defendant a fair trial. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. To establish the deficiency of counsel's performance, Franklin also must overcome the strong presumption that "the challenged action might be considered sound trial strategy." *Id.* at 689, 104 S.Ct. 2052 (internal citations and quotations omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691, 104 S.Ct. 2052 (citation omitted).

On direct appeal, Franklin's counsel raised more than 20 issues challenging aspects of his trial and sentence; an effort that dispels any notion of *per se* ineffectiveness. The record does not, however, give insight as to why Franklin's counsel did not raise on direct appeal Franklin's claim that the state misled the jury about Williams' role in Evans' murder. Accordingly, we must make our own assessment of the strength of that claim. In so doing, if we determine that Franklin's counsel omitted raising "a significant and obvious issue" without a legitimate strategic purpose, we will conclude that Franklin received ineffective assistance of counsel. *See Mason v. Hanks,* 97 F.3d 887, 893 (7th Cir.1996) ("[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.").

As the district court did, we recognize that Franklin's counsel may have chosen not to advance each and every possible due process claim on direct appeal in an effort to streamline the argument before the Illinois Supreme Court. After all, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (internal citations and quotations omitted). Our review of the record, however, shows that the issues Franklin's counsel raised on direct appeal bear a strong similarity to the due process claims that Franklin raises in this Court. Specifically, on direct appeal, Franklin's counsel argued that: (1) the trial court erred in allowing the state to portray Williams as a credible witness who had no motive to lie about his involvement in the murder of Evans, (*Franklin I,* 552 N.E.2d at 752); (2) because Williams' involvement in the commission of the offense was evident and because Williams' testimony was crucial to the state's case, his counsel's failure to tender an accomplice witness testimony instruction to the court denied him a fair trial, (*id.* at 754–55); and (3) the circuit court erred in not instructing the jury on accomplice witness testimony, (*id.* at 754). Thus, Franklin's appellate counsel raised on direct appeal arguments that, although worded differently, are similar in substance to the due process claims Franklin now contends should have been brought on direct appeal. We cannot say that Franklin's appellate counsel fell below an objective standard of reasonableness or that he was so prejudiced as to constitute an unfair trial. Therefore, Franklin's ineffective assistance of counsel argument does not qualify as cause to set aside the procedural default of his due process claims.

As we previously noted, procedural default will be excused if a defendant can show that a failure to review the defendant's claims would result in a fundamental miscarriage of justice. *Patrasso,* 121 F.3d at 301. Franklin, however, does not make this argument and we will not make it for him. In sum, Franklin has not demonstrated either cause and prejudice or a fundamental miscarriage of justice such that he can escape the procedural default on his due process claims. The district

court properly denied the claim without reaching the merits.

## B. Ineffective Assistance of Trial Counsel

■■■■ Franklin next contends that he received ineffective assistance of trial counsel because his attorney failed to tender a jury instruction on accomplice witness testimony. This claim was rejected by the Illinois Supreme Court on Franklin's direct appeal. *See Franklin I*, 552 N.E.2d at 754–55. When a state court applies established law, its decision must be respected unless "unreasonable." *See* 28 U.S.C. § 2254(d)(1). Once again, we use the test set forth in Strickland to resolve this issue. *See Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052. "*Strickland* builds in an element of deference to counsel's choices in conducting the litigation; § 2254(d)(1) adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir.1997). "[W]hen the constitutional question is a matter of degree, rather than of concrete entitlements, a reasonable decision by the state court must be honored." *Id.* at 881–82 (internal citations and quotations omitted). *Strickland* calls for inquiry into degrees; it is a balancing rather than a bright-line approach. "This means that only a clear error in applying *Strickland*'s standard would support a writ of habeas corpus." *Id.* at 882.

In considering Franklin's argument that his trial counsel was ineffective because he failed to tender an accomplice-witness instruction, the Illinois Supreme Court held:

> After Williams came forward and offered his account of what had transpired, the State charged him with the murder of Elgin Evans, Jr. After a preliminary hearing, the circuit court found that there was no probable cause to charge Williams for that offense. Although a finding of no probable cause at a preliminary hearing does not serve as a bar to later indictment (Ill.Rev.Stat. 1985, ch. 38, par. 112–4), the fact that there was a no-probable-cause finding suggests to the reasonably competent counsel that the witness did not act as an accomplice. As the standard is one of objective reasonableness under "prevailing professional norms" (*Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694), defense counsel's reliance on the no-probable-cause finding in deciding not to tender the accomplice witness instruction cannot be deemed deficient.

*Franklin I*, 552 N.E.2d at 755. This decision was not unreasonable. Although the state still could re-indict Williams as an accomplice to the Evans murder, the combination of the no-probable-cause finding and the failure of the prosecution to reindict Williams could reasonably suggest to Franklin's trial counsel that an accomplice witness instruction likely would not be granted. We deny Franklin's claim.

## C. Sentencing Court Instructions

■■■ Finally, Franklin claims that the trial court incorrectly instructed the sentencing jury that its verdict, whether for or against a death sentence, must be unanimous. As a result, Franklin alleges that he was denied a fair sentencing hearing. Under Illinois law, only a unanimous jury may impose the death sentence: if a single juror opposes giving the death penalty, a defendant may receive only a term of imprisonment. *See* 720 ILCS 5/9–1(g). Franklin contends that the sentencing judge likely confused the jury because he improperly instructed that its verdict, whether for *or against* a sentence of death, must be unanimous.

We disagree with Franklin's contention but we need not resolve this claim on the merits because Franklin has forfeited this argument. Franklin raised the same claim on direct appeal to the Illinois Supreme Court. *See Franklin I*, 552 N.E.2d at 760. In *Franklin I*, the court rejected this claim on procedural grounds, finding that Franklin had forfeited this issue by failing to raise an objection to the court's instruc-

tions at the sentencing hearing. *Id.* Because forfeiture is an adequate and independent state ground for a decision, *see Patrasso*, 121 F.3d at 301, this claim has been procedurally defaulted unless Franklin can show either cause and prejudice for the failure to raise the claim in state court, or that the default would lead to a fundamental miscarriage of justice, *see id.* Franklin does not attempt to satisfy either of the procedural default exceptions and, therefore, we deny his claim.

CONCLUSION

For the foregoing reasons, we AFFIRM.