Brian THOMAS, Petitioner–Appellant,

v.

Gary R. McCAUGHTRY, Warden,
Waupun Correctional Institution,
Respondent–Appellee.

No. 99–1246.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1999.

Decided Jan. 26, 2000.

Howard B. Eisenberg (argued), Milwaukee, WI, for Petitioner–Appellant.

James E. Doyle, Office of the Attorney General, Wisconsin Department of Justice, Madison, WI, Jane A. Cronan (argued), Department of Justice, State of Wisconsin, Madison, WI, for Respondent–Appellee.

Before EASTERBROOK, RIPPLE and DIANE P. WOOD, Circuit Judges.

RIPPLE, Circuit Judge.

Brian Thomas, a Wisconsin state prisoner, received a conduct report alleging that he had engaged in "Sexual Conduct" in violation of § DOC 303.15 of the Wisconsin Administrative Code. He appealed the disciplinary committee's finding of guilty to the warden of the institution; the warden remanded it to the disciplinary committee for further action. After the disciplinary committee acted for the second time and found him guilty, Mr. Thomas sought review in the Wisconsin state courts through that state's certiorari proceeding. The state courts held that relief was barred because Mr. Thomas had not exhausted available administrative remedies. Mr. Thomas then sought a writ of habeas corpus in the district court. See 28 U.S.C. § 2254. After the court denied the petition, he took this appeal to this court. For the reasons set forth in the following opinion, we affirm the judgment of the district court because Mr. Thomas has procedurally defaulted.

# I

## BACKGROUND

### A. Facts

Brian Thomas is a state prisoner at the Waupun Correctional Institution ("WCI"), a maximum security facility in Waupun, Wisconsin. On April 3, 1997, Mr. Thomas received a conduct report alleging that he had engaged in "Sexual Conduct" in violation of § DOC 303.15 of the Wisconsin Administrative Code.[1] The conduct report accused Mr. Thomas of washing another inmate's back with a soapy towel while both men were naked in the same shower stall. The conduct report also included these facts: (1) Mr. Thomas admitted to being bisexual and to leading this lifestyle before his incarceration; (2) the other inmate, Timothy Harrison, stated that, on a previous occasion, Mr. Thomas had tried to kiss him while they were working in the dishroom; and (3) Mr. Thomas admitted that the dishroom incident occurred but also stated that he was only "joking around." R.18 at 3.

As a result of this conduct report, WCI's adjustment committee, the committee charged with reviewing violations such as this, conducted a disciplinary hearing for Mr. Thomas on April 24, 1997. At the hearing, Mr. Thomas admitted to being in the shower with Harrison but denied any sexual intent on his part. Harrison testified that Mr. Thomas never touched him.

The committee, however, found the 2 prisoners to be incredible and instead credited the statement of the officer who had filed the conduct report.

According to the form that memorialized the committee's decision, the adjustment committee found Mr. Thomas guilty of "Sexual Conduct" as defined by § DOC 303.15. The committee did not indicate the subsection that Mr. Thomas had violated. As indicated by the decision form, the committee relied on the conduct report and Mr. Thomas' "DOC 120," or identification card, as evidence for its decision. The committee explained the reasons for its decision with these notes: "We find the witness not credible states inmate Thomas did not wash back while Thomas stated he did. We find Capt Strahota credible in his report of the incident. Inmate knowingly was in a shower stall with another inmate. Inmate admitted to washing the other inmates back." R.18 at 18.

A violation of the rules prohibiting "Sexual Conduct" is a major violation as defined by DOC regulations, and as such, the procedure to be followed by the corrections officials and Mr. Thomas during the course of the disciplinary proceedings was governed by § DOC 303.76,[2] which requires inmates to appeal the decision of the adjustment committee to the superintendent, or warden, within 10 days of the committee's decision. See Wis. Admin.

---

1. Section DOC 303.15 defines "Sexual Conduct" in these terms:

 (1) Any inmate who intentionally does any of the following is guilty of an offense:
 (a) Has sexual intercourse, as defined in s. DOC 303.02(16), with another person;
 (b) Has sexual contact, as defined in s. DOC 303.02(15), with another person;
 (c) Requests, hires or tells another person to have sexual intercourse or sexual contact;
 (d) Exposes his or her intimate parts to another person for the purpose of sexual arousal or gratification, or for exhibitionistic purposes; or
 (e) Has contact with or performs acts with an animal that would be sexual intercourse or sexual contact if with another person.

 (2) Lack of consent is not an element of the offense of sexual conduct.
 Wis. Admin. Code § DOC 303.15. According to regulations, the term "sexual contact" referenced in § DOC 303.15(b) means:
 (a) Kissing;
 (b) Handholding;
 (c) Touching by the intimate parts of one person to any part of another person. In this subsection, "intimate parts" means breast, penis, buttocks, scrotum, or vaginal area, whether clothed or unclothed; or
 (d) Any touching by any part of one person or with any object or device of the intimate parts of another person.
 Wis. Admin. Code § DOC 303.02(15).

2. The entire text of Wis. Admin. Code § DOC 303.76 is appended to this opinion.

Code § DOC 303.76(7)(a). The warden then must decide within 10 days whether to affirm the committee's decision and sentence, affirm the decision but reduce the sentence, reverse the decision, or remand the case back to the committee. *See* Wis. Admin. Code § DOC 303.76(7)(b) & (c). According to § DOC 303.76(7)(d), the warden's decision is the final decision.

After being notified of the committee's decision, Mr. Thomas properly appealed to WCI's warden, Gary McCaughtry. On April 28, 1997, the warden issued his decision, which stated: "I remand back to Adjustment Committee to address reasons for decision in record. All other matters are correct. [Evidence][3] supports findings. No technical errors." R.18 at 9.

On remand, the adjustment committee completed another decision form. The committee again indicated that Mr. Thomas had been found guilty of violating § DOC 303.15, but the committee also provided slightly different reasons for its decision. The committee indicated that it relied not only on the conduct report and the "DOC 120" as evidence but also on "written statements" and "303.15 (A)(1)(6)," a non-existent code section. R.18 at 5. The committee explained the reasons for its decision with this paragraph:

> After review of the C.R. [Conduct Report], the inmates statement, witness testimony and the evidence, we find he intentionally attempted to have sexual contact with another inmate while they were taking a shower. Both inmates were unclothed, in the same shower stall, and inmate Thomas did admit to washing inmate Harrison's back. Because of the prison setting and being an all male institution this type of behavior is not permitted.

R.18 at 5.

Mr. Thomas did not appeal this second decision to the warden. Because Mr. Thomas was found guilty of "Sexual Conduct," he lost 90 days good time credit.

## B. State Court Proceedings

Mr. Thomas later filed an action for a common law writ of certiorari in the Circuit Court of Dane County, Wisconsin. He sought review of the adjustment committee's decision on remand. The court dismissed Mr. Thomas' lawsuit because, according to the court, he had failed to exhaust his administrative remedies as required by state law. The court rejected Mr. Thomas' contention that, because the warden previously had decided his case, he was not required to file an appeal of the adjustment committee's decision on remand. Noting that the adjustment committee's decision on remand referenced a non-existent code section ("303.15(A)(1)(6)"), the court explained that Mr. Thomas could have, and should have, appealed the committee's second decision because of this discrepancy. Because the court believed Mr. Thomas should have appealed this second decision, the court held that Mr. Thomas' failure to appeal was "fatal error" and that, therefore, the court lacked subject matter jurisdiction over his petition.

The Court of Appeals of Wisconsin issued an opinion which incorporated the circuit court's decision as its own and summarily affirmed the judgment of that court. The Supreme Court of Wisconsin denied review of Mr. Thomas' case.

## C. Decision of the District Court

[2] Subsequently, Mr. Thomas commenced this federal habeas proceeding by filing his petition in the district court. He raised 2 issues in his habeas petition to the district court. First, Mr. Thomas alleged that he was mistreated while in segregation at WCI. Second, he challenged his loss of 90 days good time credit for violating § DOC 303.15. The district court held that Mr. Thomas had failed to exhaust any of his administrative remedies regarding his alleged mistreatment in segregation.

---

**3.** The Wisconsin circuit court that took up this matter before Mr. Thomas brought his federal habeas petition found the word "Evi-dence" to be indecipherable. Mr. Thomas submits that the word is "Evidence."

The court also determined that Mr. Thomas' claim regarding the violation of § DOC 303.15 was barred because he had failed to appeal the second decision of the adjustment committee. The court also held that, even if Mr. Thomas had not defaulted his claim as to the DOC violation, that claim would not be cognizable under § 2254 because Mr. Thomas only lost statutory good time credits.[4] Thus, the district court dismissed Mr. Thomas' habeas petition.

After the district court dismissed his petition, Mr. Thomas filed a notice of appeal and sought to proceed *in forma pauperis*. The district court refused to provide a certificate of appealability and denied Mr. Thomas' request to proceed *in forma pauperis*. A judge of this court granted the certificate of appealability and leave to proceed *in forma pauperis*.

## II

### DISCUSSION

In the district court, Mr. Thomas raised 2 claims in his habeas corpus petition. The first claim, relating to his treatment while in segregation, has been abandoned on appeal. Mr. Thomas focuses instead on his second claim—that, because the adjustment committee had insufficient evidence to find him guilty of "Sexual Conduct," his loss of the 90 days good time credit violates the Due Process Clause.

 A state prisoner like Mr. Thomas may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim. *See* 28 U.S.C. § 2254(b) & (c); *Schaff v. Snyder*, 190 F.3d 513, 524 (7th Cir.1999); *Moore v. Parke*, 148 F.3d 705, 708 (7th Cir.1998). Therefore, for Mr. Thomas to obtain federal habeas relief on the merits of this claim, he first must have provided Wisconsin's courts with a full and fair opportunity to review it. *See Breard v. Greene*, 523 U.S. 371, ——, 118 S.Ct. 1352, 1355, 140 L.Ed.2d 529 (1998) (per curiam); *Schaff*, 190 F.3d at 523–24. If Mr. Thomas procedurally defaulted or otherwise forfeited his claim, he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice. *See Rodriguez v. Scillia*, 193 F.3d 913, 917 (7th Cir.1999); *Schaff*, 190 F.3d at 526; *Franklin v. Gilmore*, 188 F.3d 877, 882 (7th Cir.1999). A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

### A.

There is no question in this case that Mr. Thomas has exhausted his available judicial remedies in Wisconsin. He appealed to the state's intermediate appellate court, which summarily affirmed the circuit court's decision, and to the Supreme Court of Wisconsin, which denied review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 1732–33, 144 L.Ed.2d 1 (1999) (holding that state prisoners must complete one full round of the state's established appellate review system, including a petition for discretionary review when available by the state's highest court, before filing a habeas petition in federal court). Therefore, the question in this case is whether Mr. Thomas procedurally defaulted his claim for federal habeas purposes by not appealing the adjustment committee's decision on remand. Relying on the disposition of Mr. Thomas' claim in state court, the district court dismissed

---

4. Although we need not decide this issue in light of our holding, we pause to note briefly that the district court erred in its conclusion that the loss of prison good time credit is not cognizable under 28 U.S.C. § 2254. Our prior cases are clear on this; prisoners have a protected liberty interest in their good time credit. *See, e.g., Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir.1997) (holding that a prisoner's loss of good time credit is a "deprivation of a liberty interest protected by the Due Process Clause"); *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir.1996) (same).

Mr. Thomas' habeas petition on the ground that Mr. Thomas had procedurally defaulted his claim under state law. Because the district court dismissed the habeas petition based on a legal determination, we review that judgment de novo. *See Jones v. Bertrand*, 171 F.3d 499, 500 (7th Cir.1999).

[5, 6] In federal habeas corpus proceedings, state law controls whether a claim has been defaulted. *See Franklin*, 188 F.3d at 881. Thus, in our review of the district court's judgment, we must look to the adjudication of Mr. Thomas' claim by the Wisconsin courts. Because the Court of Appeals of Wisconsin summarily affirmed the circuit court's judgment and incorporated it as its own, we must look to the opinion of the state circuit court as the basis for finding that Mr. Thomas defaulted his claim. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir.1997); *Bobo v. Kolb*, 969 F.2d 391, 399 (7th Cir.1992); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382–83 (7th Cir.1990). In its decision, the circuit court held that Mr. Thomas could have, and should have, taken an appeal of the adjustment committee's decision after remand to the warden. The circuit court held that, because he failed to take this second appeal to the warden, Mr. Thomas could not obtain judicial review of the adjustment committee's decision.

[7] "[W]hen a state court has declined to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement," the independent and adequate state grounds doctrine bars federal review of that state court judgment. *E.g., Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Schaff*, 190 F.3d at 524; *Franklin*, 188 F.3d at 881. Therefore, in those instances where a state court has found that a prisoner has defaulted his claim under state law, as is the case here, we are usually bound to respect that decision. *See Bobo*, 969 F.2d at 399. To preclude federal habeas review, however, the state court's decision must be both "independent" and "adequate" to support that court's judgment. *See Coleman*, 501 U.S. at 729–30, 111 S.Ct. 2546. A state court's decision is independent if that court "actually ... relied on the procedural bar as an independent basis for its disposition of the case." *Harris v. Reed*, 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). Whether a ground is independent depends on state law, *see Liegakos*, 106 F.3d at 1385; therefore, in order for the state judgment to bar federal habeas review, the last state court to render a judgment in the case must have "clearly and expressly state[d] that its judgment rests on a state procedural bar," *Jenkins v. Nelson*, 157 F.3d 485, 491 (7th Cir.1998) (quoting *Harris*, 489 U.S. at 263, 109 S.Ct. 1038) (quotation marks omitted), *cert. denied*, —— U.S. ——, 119 S.Ct. 2402, 144 L.Ed.2d 801 (1999).

[8] A state court's finding of procedural default is an adequate ground that would preclude federal review only if the procedural rule applied by the state court is "firmly established and regularly followed." *James v. Kentucky*, 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984); *Franklin*, 188 F.3d at 882. We shall defer to a state court's application of a procedural rule when that rule is applied in a "consistent and principled way," but a rule that is "infrequently, unexpectedly, or freakishly" applied is not an adequate state ground that bars federal habeas review. *Bobo*, 969 F.2d at 399 (quoting *Prihoda*, 910 F.2d at 1383) (quotation marks omitted); *see also Tredway v. Farley*, 35 F.3d 288, 295 (7th Cir.1994) (per curiam), *cert. denied*, 513 U.S. 1129, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995); *Lilly v. Gilmore*, 988 F.2d 783, 785 (7th Cir.), *cert. denied*, 510 U.S. 852, 114 S.Ct. 154, 126 L.Ed.2d 116 (1993); *Barksdale v. Lane*, 957 F.2d 379, 382 (7th Cir.), *cert. denied*, 506 U.S. 890, 113 S.Ct. 257, 121 L.Ed.2d 189 (1992). Likewise, if a prisoner "could not have been deemed to have been apprised of [the

rule's] existence at the time he omitted the procedural step," the state court's judgment is not an adequate ground that would bar federal habeas review. *Moore*, 148 F.3d at 709 (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457, 78 S.Ct. 1163, 2 L.Ed.2d 1488(1958)) (internal quotation marks omitted).

Mr. Thomas does not challenge the independence of the state court's ruling. It is clear that Wisconsin's circuit court and court of appeals both rested their judgments on state procedural grounds.[5] Instead, Mr. Thomas contends that the ground relied upon by the state court as a basis for default is not adequate. We therefore must determine whether the state court applied a firmly established and regularly followed exhaustion requirement in a consistent and principled way. If it did, Mr. Thomas cannot obtain federal habeas relief on his defaulted claim. If, as Mr. Thomas contends, the state court imposed the exhaustion requirement in an inconsistent, unexpected, or freakish way, we may reach the merits of his claim because the state court's finding of default would not meet the independent and adequate state ground threshold.

**B.**

**1.**

■ As a general practice, Wisconsin's courts have long required prisoners and non-prisoners alike to exhaust available administrative remedies before obtaining judicial review of their claims. *See, e.g., Hermann v. Town of Delavan*, 215 Wis.2d 370, 572 N.W.2d 855, 859 (Wis.1998) (applying the general exhaustion requirement in a case involving individual taxpayers); *Jackson County Iron Co. v. Musolf*, 134 Wis.2d 95, 396 N.W.2d 323, 325 (Wis.1986) (corporate taxpayer); *Kramer v. Horton*, 128 Wis.2d 404, 383 N.W.2d 54, 58 (Wis.) (state university professor), *cert. denied*,

479 U.S. 918, 107 S.Ct. 324, 93 L.Ed.2d 296 (1986), *and overruled on other grounds by Casteel v. Vaade*, 167 Wis.2d 1, 481 N.W.2d 476 (Wis.1992); *Nodell Inv. Corp. v. City of Glendale*, 78 Wis.2d 416, 254 N.W.2d 310, 315 (Wis.1977) (property owners); *State ex rel. Braun v. Krenke*, 146 Wis.2d 31, 429 N.W.2d 114, 118 (Wis. Ct.App.1988) (prisoner). In Wisconsin, the exhaustion of administrative remedies rule is "a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity." *Nodell*, 254 N.W.2d at 315. The general exhaustion rule is a rule of "policy, convenience and discretion," *Hermann*, 572 N.W.2d at 860 (quoting *Association of Career Employees v. Klauser*, 195 Wis.2d 602, 536 N.W.2d 478, 484 (Wis.Ct. App.1995)), but "where administrative action has taken place, and a statute sets forth a specific procedure for review of that action and court review of the administrative decision, the statutory remedy is exclusive and the parties cannot seek judicial review of the agency decision through other means," *Hermann*, 572 N.W.2d at 859; *see also Jackson County*, 396 N.W.2d at 325; *State ex rel. First Nat'l Bank v. M & I Peoples Bank of Coloma*, 82 Wis.2d 529, 263 N.W.2d 196, 202 (Wis.1978).

In 1995, Wisconsin's legislature enacted a provision aimed specifically at prisoner litigation; the provision codified the general exhaustion of administrative remedies requirement. *See* 1995 Wis. Act 27, § 7141g; *Moore v. Stahowiak*, 212 Wis.2d 744, 569 N.W.2d 711, 713 (Wis.Ct.App. 1997). At the time pertinent to this litigation, the statute read in full:

No prisoner, as defined in § 301.01(2), may commence a civil action or special proceeding against an officer, employe or agent of the department of corrections in his or her official capacity or as

**5.** In reaching its decision, the circuit court relied solely on state law dealing with Wisconsin's administrative exhaustion requirement. The Court of Appeals of Wisconsin also rested solely on state law grounds, as evidenced by that court's explanation of its

decision: "We ... conclude that the circuit court's memorandum decision and order identifies and applies the proper legal standards to the relevant facts and reaches the correct conclusion." R.3.

an individual for acts or omissions committed while carrying out his or her duties as an officer, employe or agent or while acting within the scope of his or her office, employment or agency until the person has exhausted any administrative remedies that the department of corrections has promulgated by rule.

Wis. Stat. § 801.02(7) (West Supp.1996).[6] According to Wisconsin's courts, § 801.02(7) "specifically requires that an inmate exhaust all administrative remedies before resorting to bringing a civil action against a DOC official." *Moore,* 569 N.W.2d at 713. Since § 801.02(7) first appeared on Wisconsin's books, the state's appellate courts have required strict adherence to the exhaustion requirement and have uniformly required inmates to exhaust available administrative remedies before the court would afford the inmates judicial review of claims covered by the statute. *See State ex rel. Frasch v. Cooke,* 224 Wis.2d 791, 592 N.W.2d 304, 305–06 (Wis.Ct.App.1999) (holding that an inmate must exhaust available administrative remedies promulgated by the DOC with regard to alleged procedural errors before the inmate can seek judicial review for any of his claims); *State ex rel. Smith v. McCaughtry,* 222 Wis.2d 68, 586 N.W.2d 63, 68 (Wis.Ct.App.1998) (holding that inmates must plead and prove exhaustion of

remedies for all claims, procedural and non-procedural, to obtain judicial review); *State ex rel. Ortega v. McCaughtry,* 221 Wis.2d 376, 585 N.W.2d 640, 645–46 (Wis. Ct.App.1998) (reaching the merits of an inmate's certiorari action because the inmate had exhausted his administrative remedies); *Moore,* 569 N.W.2d at 713–14 (holding, on the authority of § 801.02(7), that an inmate must exhaust any available administrative remedy before seeking judicial review).[7]

For inmates charged with a major violation of DOC regulations, the DOC has promulgated a hearing and appeal procedure; this procedure can be found in the Wisconsin Administrative Code at § DOC 303.76. When proceeding under this regulation, the prison's adjustment committee first holds a hearing to take evidence regarding the inmate's alleged infraction; then the committee renders its decision. *See* Wis. Admin.Code § DOC 303.76(5) & (6). An inmate is entitled to appeal the adjustment committee's decision to the prison's warden, and the warden's decision is final. *See* Wis. Admin. Code § DOC 303.76(7). By the terms of § 801.02(7), an inmate may seek judicial review only after he has completed the administrative process outlined in § DOC 303.76. *See* Wis. Stat. § 801.02(7); *Moore v. Stahowiak,* 569 N.W.2d at 713.[8]

---

6. In 1997, § 801.02(7) was amended and renumbered as § 801.02(7)(b). It now reads:

 No prisoner may commence a civil action or special proceeding, including a petition for a common law writ of certiorari, with respect to the prison or jail conditions in the facility in which he or she is or has been incarcerated, imprisoned or detained until the person has exhausted all available administrative remedies that the department of corrections has promulgated by rule or, in the case of prisoners not in the custody of the department of corrections, that the sheriff, superintendent or other keeper of a jail or house of correction has reduced to writing and provided reasonable notice of to the prisoners.

 Wis. Stat. § 801.02(7)(b) (West Supp.1999).

7. *Tratz v. Zunker,* 201 Wis.2d 774, 550 N.W.2d 141, 142–43 (Wis.Ct.App.1996), allowed judicial review of a prisoner petition. Although acknowledging the existence of an

exhaustion doctrine, the court did not cite explicitly § 801.02(7), perhaps because, in all likelihood, its effective date made the subsection inapplicable in that case. In any event, the Court of Appeals of Wisconsin went on to hold that exhaustion was not required because, with regard to the particular prisoner complaint at issue, there were no administrative remedies to exhaust.

8. Under more recent revisions of § 801.02(7) and DOC regulations, inmates are now required to seek review of procedural errors in the hearing process through the Inmate Complaint Review System before they may turn to Wisconsin's courts. Because these revisions took effect after Mr. Thomas sought judicial relief from the circuit court, these new requirements do not apply to Mr. Thomas' claim.

There is no question that, as a general proposition, Wisconsin law requires exhaustion of administrative remedies before the state's courts will review an administrative claim such as the one brought by Mr. Thomas. Indeed, Mr. Thomas acknowledges the general rule in Wisconsin that administrative remedies must be exhausted before judicial review can be sought. He also concedes that in his case "administrative exhaustion is obtained by appealing from the disciplinary board to the prison warden." Appellant's Br. at 9 (citing Wis. Admin. Code § DOC 303.76). But, Mr. Thomas submits, Wisconsin's general exhaustion rule is subject to an exception: Exhaustion of administrative remedies is not required if to do so would be futile. According to Mr. Thomas, he is entitled to federal habeas review on his claim despite the determination by Wisconsin's courts that he has procedurally defaulted this claim under state law because the Wisconsin courts failed to apply the futility exception to his case. Had the Wisconsin courts applied the futility exception fairly and consistently to his case, Mr. Thomas submits, his failure to appeal the adjustment committee's decision on remand would be excused.

In Mr. Thomas' view, the so-called "futility exception" applies if he can show that "the administrative agency would not provide him with relief, even if he pursued the available remedy." Appellant's Br. at 10. Specifically, with regard to the claim he now brings to this court on habeas review, Mr. Thomas argues that it would have been futile for him to take a second appeal to the warden because the warden already had decided his case. Therefore, Mr. Thomas contends, the state circuit court erred in dismissing his certiorari action on the ground that he had procedurally defaulted. In Mr. Thomas' view, nothing could have been gained by his taking a second appeal to the warden.

**9.** *Tratz* might also lend support to the view that the futility exception to the exhaustion doctrine in prisoner cases is still viable in Wisconsin. *See* 550 N.W.2d at 142–43.

The State, on the other hand, contends that, although the state's courts have recognized a general futility exception, Wisconsin law obligates prisoners to exhaust their administrative remedies before filing any action in state court. The State primarily relies on the language of § 801.02(7) and the opinion of the Court of Appeals of Wisconsin in *Moore v. Stahowiak*, 212 Wis.2d 744, 569 N.W.2d 711 (Wis. Ct.App.1997).

[ ] Although § 801.02(7) requires inmates to exhaust administrative remedies, the provision does not eliminate expressly the common law futility exception that predated the statute. Because statutes in derogation of the common law are read narrowly in Wisconsin, *see Grube v. Daun*, 210 Wis.2d 681, 563 N.W.2d 523, 527 (Wis.1997) ("A statute should not be construed as changing the common law unless the intent to cause such a change is clearly expressed in the statute."), we cannot say with any certainty that the futility exception had been eliminated by § 801.02(7). Moreover, one case from the Court of Appeals of Wisconsin provides some support for the view that the futility exception was not eliminated by the passage of the statute. In *Smith*, when reviewing a certiorari proceeding brought by a prisoner, the Court of Appeals of Wisconsin wrote: "Failure to plead exhaustion of remedies, where they are not shown to be futile, is fatal to a complaint." 586 N.W.2d at 65.[9]

**2.**

[ ] Whether the futility exception in Wisconsin for prisoner litigation survives § 801.02(7) is a question which the Supreme Court of Wisconsin no doubt will resolve in due course. It need not be resolved here in order to decide the case before us. Even assuming, *arguendo*, that the futility exception is still in effect in

However, as we have noted earlier, *see supra* note 7, it is not clear that the Court of Appeals of Wisconsin regarded § 801.02(7) to be applicable in that case.

prisoner cases, Mr. Thomas could not benefit from it. This exception would not excuse Mr. Thomas' failure to appeal the adjustment committee's second decision to the warden.

The state circuit court, although never expressly mentioning the possibility of a futility exception, impliedly rejected Mr. Thomas' argument that a second appeal would have been futile. That court identified at least one issue that it believed should have been raised by Mr. Thomas on a second appeal to the warden: the committee's apparent reliance on a non-existent regulation as the basis for the committee's decision. Mr. Thomas argues that the issue identified by the circuit court is "hypertechnical" and could not serve as a reasonable basis to require a second appeal. On this record, we cannot accept that characterization of the Wisconsin court's estimation of the situation. Not only did the adjustment committee rely on a non-existent regulation, but it did so in the context of finding Mr. Thomas guilty of *attempting* to engage in "Sexual Conduct"—rather than actually committing the substantive violation. Mr. Thomas had been charged with the substantive violation, not attempt. Under Wisconsin's disciplinary code, the attempt and the substantive offense are charged separately and separate findings entered for each. *See* Wis. Admin. Code § DOC 303.06. Under these circumstances, we cannot say that the circuit court acted "unexpectedly" or "freakishly." The circuit court's insistence on exhaustion is certainly consistent with the general rule that any available administrative remedy must be pursued if adequate relief could be obtained through that remedy.

We also note that Mr. Thomas could not benefit from Wisconsin's futility exception because he cannot demonstrate that his potential claim had the characteristics that would entitle him to the benefit of that exception. Wisconsin's courts have ex-

cused a failure to exhaust when "the reasons supporting the exhaustion rule are lacking." *Nodell*, 254 N.W.2d at 316. As explained in *Nodell*, "[t]he premise of the exhaustion rule is that the administrative remedy (1) is available to the party on his initiative, (2) relatively rapidly, and (3) will protect the party's claim of right." *Id.* at 315. Wisconsin's courts have explained that the statutory method for obtaining review of administrative decisions is the exclusive remedial method in all but "exceptional cases." *See, e.g., First Nat'l Bank*, 263 N.W.2d at 204. For example, Wisconsin's courts have held it to be an "exceptional case" and have excused a failure to exhaust when "statutory notice was not given and the aggrieved party did not receive actual notice until the time for appeal had expired," *id.* at 204, or if the plaintiff can establish that the administrative process "either cannot or will not afford [the plaintiff] adequate relief," *Braun*, 429 N.W.2d at 118 (quoting *Kramer*, 383 N.W.2d at 60).[10] The futility exception also has been applied when the administrative agency simply has no power to grant the relief requested. *See Tratz*, 550 N.W.2d at 142–43; *Town of Eagle v. Christensen*, 191 Wis.2d 301, 529 N.W.2d 245, 252 (Wis.Ct.App.1995).

 Mr. Thomas has not established that the futility exception applies to him under any of these formulations. To the contrary, he merely asserts that he does not believe anything would have been gained if he had asked the warden to hear his claim again. This assertion is not enough to meet his burden under Wisconsin law. *See Braun*, 429 N.W.2d at 118 ("To escape the exhaustion requirement, [the petitioner] must prove that [the agency] either cannot or will not afford her adequate relief." (internal quotation marks omitted)); *Kramer*, 383 N.W.2d at 60 ("To escape the exhaustion requirement ... [the petitioner] basically must prove that

---

10. A plaintiff must demonstrate that an administrative agency cannot or will not afford relief in the sense that "the reviewing agency is inherently biased," or "the agency is unable

or unwilling to hear the claim," or "the agency is delaying review unnecessarily." *Kramer*, 383 N.W.2d at 60.

the administrative body either cannot or will not afford him adequate relief.").

Because the circuit court applied the general exhaustion of administrative remedies requirement in a manner consistent with both § 801.02(7) and a host of Wisconsin cases, we cannot say that the exhaustion requirement was unfairly or inconsistently applied to Mr. Thomas. Even assuming, *arguendo*, that the futility doctrine remains viable for prisoner litigation in Wisconsin's courts, Mr. Thomas has not demonstrated that the circuit court has acted arbitrarily, unexpectedly, or freakishly.

### Conclusion

The state court determination that Mr. Thomas procedurally defaulted his claim by not exhausting his administrative remedies was an adequate state law ground that precludes federal review of the merits of Mr. Thomas' habeas petition. Before this court, he makes no assertion that he can demonstrate cause and prejudice or a fundamental miscarriage of justice. Accordingly, we must affirm the judgment of the district court.

AFFIRMED

### APPENDIX

DOC 303.76 Hearing procedure for major violations. (1) Notice. When an inmate is alleged to have committed a major violation and the security director or designee has reviewed the conduct report pursuant to s. DOC 303.67, a copy of the approved conduct report shall be given to the inmate within 2 working days after its approval. The conduct report shall inform the inmate of the rules which he or she is alleged to have violated, the potential penalties or other potential results that may be imposed, including but not limited to removal from work release, and that he or she may exercise the right to a due process hearing or may waive this right in writing. The inmate shall be informed that if he or she waives the right to a formal due process hearing, he or she will be given an informal hearing under s. DOC 303.75. The inmate shall be informed that if a formal due process hearing is chosen, the inmate may present oral, written, documentary and physical evidence, and evidence from voluntary eyewitnesses in accordance with this section and s. DOC 303.81; that he or she has a right to the assistance of a staff advocate in accordance with this section and s. DOC 303.79; that the adjustment committee may permit direct questions or require the inmate or his or her advocate to submit questions to the adjustment committee to be asked of the witness; that repetitive, disrespectful and irrelevant questions are forbidden; and that the inmate may appeal the finding and disposition of the adjustment committee in accordance with sub. (7). The inmate shall also be informed that if he or she refuses to attend a hearing, the hearing maybe conducted without the inmate being present.

(2) Waiver. An inmate may waive the right to a due process hearing in writing at any time. If the inmate waives a due process hearing, the conduct report shall be disposed of under the hearing procedures for minor violations, s. DOC 303.75. A waiver does not constitute an admission of the alleged violation. A waiver may not be retracted without the security director's approval.

(3) Time limits. A due process hearing shall be held no sooner than 2 working days or later than 21 days after the inmate receives a copy of the conduct report and hearing notice. An inmate may waive these time requirements in writing if the security director agrees to the waiver. The inmate may request additional time to prepare for the hearing, and the security director shall grant the request unless there is a good reason to deny it.

(4) Place. The due process hearing may take place at the institution where the alleged conduct occurred, at a county jail or at an institution to which an inmate has been transferred.

(5) Hearing. The adjustment committee, as defined in s. DOC 303.82, shall conduct the due process hearing. If an inmate

refuses to attend the hearing or disrupts the hearing, the hearing may be conducted. without the inmate being present. At a due process hearing, the conduct report shall be read aloud and all witnesses for or against the accused, including the accused himself or herself and the staff member who wrote the conduct report, shall have a chance to speak. The adjustment committee may require that physical evidence be offered. The adjustment committee may permit direct questions or require the inmate or his or her advocate to submit questions to the adjustment committee to be asked of the witness. Repetitive, disrespectful or irrelevant questions are forbidden.

(6) Decision. After the hearing the adjustment committee shall deliberate in private, considering only the evidence presented to it and the inmate's records. The institution is required to establish guilt by a preponderance of the evidence. The adjustment committee may find the inmate guilty or not guilty. A committee of 3 may find the inmate guilty if at least 2 of the 3 members find by a preponderance of the evidence that he or she is guilty, and if 2 agree upon a sentence, may sentence the inmate. A committee of 2 or of one may find the inmate guilty if the committee members unanimously find by a preponderance of the evidence that the inmate is guilty and may sentence the inmate if they are unanimous as to the sentence. If a sentence is not agreed upon, the matter shall be referred to the superintendent for decision. The committee shall then recall the accused and his or her advocate, if any, and announce its decision or the decision of the superintendent. The accused and his or her advocate, if any, shall each receive a written copy of the decision.

(7) Appeal. (a) Any time within 10 days after a due process hearing, an inmate who is found guilty may appeal the decision or the sentence, or both, to the superintendent.

(b) The superintendent shall review all records and forms pertaining to the appeal and make his or her decision within 10 days following receipt of the request.

(c) The superintendent's decision shall be to:

1. Affirm the adjustment committee's decision and the sentence;

2. Affirm the adjustment committee's decision but reduce the sentence in type or quality;

3. Reverse the adjustment committee's decision. In this case, all records of the decision shall be removed from all offender-based files. Records may be kept for statistical purposes only; or

4. Return the case to the adjustment committee for further consideration.

(d) The superintendent's decision is final.