In the

# United States Court of Appeals

### For the Seventh Circuit

No. 02-1620

TERRY L. HARRIS,

*Petitioner-Appellant,*

*v.*

EUGENE MCADORY, WARDEN,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 7026—**Rebecca R. Pallmeyer**, *Judge.*

ARGUED MAY 12, 2003—DECIDED JULY 1, 2003

Before BAUER, KANNE, and WILLIAMS, *Circuit Judges.*

BAUER, *Circuit Judge.* An Illinois jury found Terry Harris guilty of murdering Emma Hopkins. He was sentenced to life imprisonment. Harris sought federal habeas relief, claiming ineffective assistance of counsel. The district court denied the petition for a writ of habeas corpus, finding that Harris had procedurally defaulted the claim. For the reasons stated herein, we affirm.

## BACKGROUND

On the evening of October 28, 1984, Terry Harris invited co-worker Emma Hopkins to accompany him to a

forest preserve. They talked in Hopkins' car until the forest preserve closed, at which time they drove to a factory parking lot. After engaging in sexual intercourse, Harris attempted to place a gun into the glove compartment of Hopkins' car. The gun discharged after Hopkins grabbed the firearm. The bullet went through the floorboard of the car, injuring neither occupant. Harris, enraged at Hopkins, strangled her to death, then removed her body and hid it inside a factory vat.

The following day, the police took Harris into custody and obtained a confession. Harris also made a formal statement to an Assistant State's Attorney. In the statement, later introduced at trial, Harris admitted that he grabbed the victim by her throat and strangled her to death.

Harris, the only witness called by defense counsel, admitted killing Hopkins, stating that he lost control when the gun fired and was afraid that it would discharge again. Harris stated that he grabbed the victim by the throat, and using two hands, strangled her, and disposed the body inside a factory vat.

The jury found Harris guilty of murder, aggravated criminal sexual assault, and aggravated kidnaping. At the sentencing hearing, Harris' evidence in mitigation consisted of the testimony of his mother, Agnes Badgett, and his sister, Helen Brown. The two women described Harris' upbringing and related their favorable impressions of him. Harris also testified at the hearing, apologizing for Hopkins' death. He contended that he committed the killing unintentionally and that he was guilty only of manslaughter.

The trial judge sentenced Harris to death. The Illinois Supreme Court vacated the sentence after finding the prosecution improperly introduced victim-impact testimony. *People v. Harris*, 547 N.E.2d 1241 (Ill. 1989). After

a new sentencing hearing, Harris was sentenced to life imprisonment. Harris then filed a post-conviction petition claiming prosecutorial misconduct, trial court error, and ineffective assistance of counsel. Unsuccessful in state court with his post-conviction petition, Harris filed a petition for a writ of habeas corpus in federal court.

In the meantime, Harris had obtained the services of a neuropsychologist. The neuropsychologist determined that Harris had an IQ of 76, putting him on the border of mental retardation. Harris was also evaluated as reading at a fourth grade level and suffering from organic brain (frontal lobe) damage. In light of this evaluation, Harris contended counsel's failure to develop and introduce evidence of these mental disabilities at the sentencing hearing constituted ineffective assistance of counsel. The district court denied the petition because this ineffective assistance claim had not been included in Harris' state post-conviction petition and Harris had not proven sufficient cause to excuse that omission.

## ANALYSIS

### A.  Sufficient Cause

In reviewing the district court's decision to deny relief, we review issues of law de novo and issues of fact for clear error. *Dellinger v. Bowen*, 301 F.3d 758, 763 (7th Cir. 2002). A petitioner seeking federal habeas relief must establish that he fully and fairly presented his federal claims to the state court. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001). So, a petitioner must give the state court a meaningful opportunity to consider the substance of the claims later presented in federal court. *Id*. Failure to adhere to these guidelines constitutes a procedural default, which bars federal review unless the petitioner demonstrates cause for the default and actual prejudice as a result of the failure, or demonstrates that

the failure to consider the claims will result in a fundamental miscarriage of justice. *Dellinger*, 301 F.3d at 764.

There is no dispute that Harris defaulted his claim of ineffective assistance of counsel. However, Harris contends, and the State denies, that sufficient cause exists to excuse the default. Specifically, Harris argues that his pro se status, his borderline mental retardation, and his organic brain dysfunction constitute cause. The district court determined that these factors did not overcome Harris' procedural default. We agree.

The Supreme Court has defined cause sufficient to excuse procedural default as "some objective factor external to the defense" which precludes petitioner's ability to pursue his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The Court delineated that cause could be established by showing interference by officials or that the factual or legal basis for a claim was not reasonably available to counsel. *Id.* However, it cautioned that these examples were not exhaustive. *Id.*

Harris contends he established cause for three reasons: (1) his pro se status; (2) his borderline mental retardation; and (3) his organic (frontal lobe) brain dysfunction. Harris cites no case law to support his argument.[1] The first element, his pro se status, need not detain us long. Harris fails to acknowledge *Barksdale v. Lane*, 957 F.2d 379 (7th Cir. 1992). In *Barksdale*, we held that a habeas peti-

---

[1] Harris' reliance on *Atkins v. Virginia*, 536 U.S. 304 (2002), is misplaced. The Court in *Atkins* held that the Eighth Amendment precludes capital punishment for mentally retarded defendants. The case sub judice is distinguishable because Harris is borderline mentally retarded, and more importantly, this is not a capital case. A cursory glance at *Atkins* reveals that the Court was addressing the issue of mental retardation solely in the context of capital punishment.

tioner's pro se status does not constitute adequate grounds for cause. *Id*. at 385-86. As there is no constitutional right to an attorney in state post-conviction proceedings, see *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), we decline to depart from our holding in *Barksdale*.

Harris' second factor proffered as a basis for cause is his borderline mental retardation. He avers that the factual and legal basis for his ineffective assistance claim was unavailable to him in light of his mental deficiencies. The neuropsychologist determined that Harris has an IQ of 76, putting him on the cusp of mental retardation. The neuropsychologist also found that Harris reads at a fourth grade level.

We have never considered whether mental illness can constitute cause for default. However, *Cawley v. Detella*, 71 F.3d 691 (7th Cir. 1995), is instructive on this question. In *Cawley*, we held that the petitioner's depression did not constitute cause because it failed "to qualify as an external impediment." *Id*. at 696. We are also guided by other circuits that have considered the issue. In *Hull v. Freeman*, 991 F.2d 86 (3d Cir. 1993), the Third Circuit determined that petitioner's borderline mental retardation did not establish cause because it was not "external" to his defense within the meaning of *Murray v. Carrier*. *Id*. at 91. The Ninth Circuit, in *Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988), held that petitioner's diagnosis as a "borderline mental defective" was insufficient to establish cause. *See also Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir. 1992) (finding petitioner's below-average intelligence insufficient to establish cause). Furthermore, it is well established in this Circuit that circumstances such as youth, lack of education, and illiteracy are not external impediments within the context of excusing procedural default. *See, e.g.*, *Dellinger v. Bowen*, 301 F.3d 758, 763 (7th Cir. 2002) (petitioner's youth and lack of education did not constitute cause); *Henderson*

*v. Cohn*, 919 F.2d 1270, 1272-73 (7th Cir. 1990) (petitioner's illiteracy and limited education insufficient to establish cause).

We find the reasoning in these cases persuasive. These cases highlight the emphasis placed on the "external" nature of the impediment. Something that comes from a source within the petitioner is unlikely to qualify as an external impediment. The examples given by the Court in *Murray* as to what constitutes an external impediment exemplify this point. Harris' low IQ and limited reading ability are not factors which are "external" to his defense. Finally, Harris' mental disability claim is belied by his gainful employment as a security guard at the time of the murder, his efforts to cover up the crime, and his ability to prepare a pro se 60-page state post-conviction petition.

Harris also claims that his organic brain dysfunction constitutes cause to excuse his procedural default. The neuropsychologist opined that Harris suffers from organic brain damage. He gave no predicate facts for this opinion, which is simply asserted without more. The district court noted that Harris' contentions about his brain dysfunction "are so conclusory that the court is uncertain they are even sufficient to require a response." In the proceedings below, Harris stated that the neuropsychologist's evaluation "provides the basis for . . . the allegations concerning Petitioner's mental health and functioning." But we have noted that a habeas petitioner must "cross some threshold of plausibility before [courts] will require the state to answer." *Dellenbach v. Hanks*, 76 F.3d 820, 822 (7th Cir. 1996).

## B. *Evidentiary Hearing*

Harris also contends that the district court should have granted him an evidentiary hearing to determine

whether his brain dysfunction excuses his procedural default. If a petitioner has failed to develop the factual basis of a claim in state court, a federal court cannot grant relief unless the claim relies on a new rule of constitutional law, or a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A). The petitioner must also establish that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

The district court correctly found that Harris failed to develop the factual basis for his ineffective assistance claim. In *(Michael Wayne) Williams v. Taylor*, 529 U.S. 420 (2000), the Court noted that diligence requires "the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. Harris did not seek an evidentiary hearing concerning his mental status or even attempt to raise the issue. Harris' state post-conviction petition was a 60-page cornucopia of claims, including almost two dozen allegations of ineffective assistance, but devoid of any mention of his mental disabilities.

Since Harris failed to develop the factual basis for his ineffective assistance of counsel claim, he must comply with § 2254(e)(2). As noted above, under § 2254(e)(2)(A), Harris must show his claim relies either on a new rule of constitutional law that was previously unavailable, or a factual predicate that could not have been previously discovered through the exercise of due diligence. Harris does not rely on a new rule of constitutional law. And, as the district court correctly noted, the factual predicate of his claim existed before he filed his habeas petition and Harris has made no showing that the factual predicate could not have been discovered through the exer-

cise of reasonable diligence. For these reasons, Harris does not satisfy the requirements of § 2254(e)(2) and therefore the district court correctly determined Harris was not entitled to an evidentiary hearing.

## CONCLUSION

The district court's order denying the writ of habeas corpus is AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*