Matthew TYLER, Petitioner,

v.

Gary R. McCAUGHTRY, Respondent.

No. 03–C–0514.

United States District Court,
E.D. Wisconsin.

Nov. 12, 2003.

Matthew Tyler, pro se.

Karla Keckhaver, Wisconsin Department of Justice, Office of the Attorney General, Madison, WI, for Respondent.

### DECISION AND ORDER

ADELMAN, District Judge.

Petitioner Matthew Tyler, a Wisconsin state prisoner, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming that his right to due process was violated when a prison disciplinary committee ("committee") revoked his good time credits. He alleges, among other things, that the committee was not impartial, that it denied him the opportunity to call witnesses, and that its decision was not supported by sufficient evidence. Respondent now moves to dismiss based on procedural default. Petitioner does not dispute that he defaulted his federal constitutional claim by failing to properly present it to the state courts but argues that the default should be excused based on cause and prejudice.

## I. BACKGROUND

While he was incarcerated at the Dodge Correctional Institution ("DCI"), petitioner was convicted by the committee of sexually assaulting his cellmate. As a consequence, he lost good time credits, which had the effect of extending his mandatory release date by forty-five days. He pursued the

administrative remedies provided by the prison system but failed to obtain relief.

Petitioner then petitioned for a writ of certiorari in state circuit court. Pursuant to Wis. Stat. § 893.735(2), he was required to file the petition within forty-five days of the date on which he exhausted administrative remedies, which was May 17, 2001. Thus, his certiorari deadline was July 2, 2001. *State ex rel. Tyler v. Bett*, 257 Wis.2d 606, 609, 652 N.W.2d 800 (Ct.App.), *review denied*, 257 Wis.2d 120, 653 N.W.2d 891 (2002).

On June 16, 2001, petitioner deposited his petition in DCI's mailbox, and the court received it on June 29, 2001. On the same day, however, the court returned the petition to him because he had failed to include various documents relating to the prison administrative process required by Wis. Stat. § 801.02(7)(c), and because he had enclosed a check for $89.00 instead of the required filing fee of $124.00. Petitioner received his papers back on July 5, 2001. *Tyler*, 257 Wis.2d at 610, 652 N.W.2d 800.

On or about July 13, 2001, petitioner refiled his petition with the necessary supporting documents and the correct filing fee. However, the court then dismissed the petition because the forty-five day limitation period had elapsed. Petitioner appealed, arguing that his petition should be considered timely under the "mailbox" rule established in *State ex rel. Shimkus v. Sondalle*, 239 Wis.2d 327, 339, 620 N.W.2d 409 (Ct.App.2000), which held that the forty-five day time limit is tolled when a prisoner deposits a petition in the prison mailbox. Alternatively, he argued that the untimeliness of his petition should be excused because the legal resources at DCI were inadequate to enable him to discover the rules governing certiorari petitions. *Tyler*, 257 Wis.2d at 608, 652 N.W.2d 800.

The court of appeals rejected petitioner's mailbox rule argument, stating that the rule applied only to *completed* petitions accompanied by the proper filing fee. *Id.* at 609, 652 N.W.2d 800. The court also rejected petitioner's argument based on the inadequacy of the legal resources at DCI, stating that the mailbox rule "was not intended to spawn, nor can it support, open-ended inquiries into the adequacy of prison legal resources, or discretionary judgments as to whether certain facts and circumstances warrant relief from statutory deadlines while others do not." *Id.* at 618, 652 N.W.2d 800.

Petitioner unsuccessfully sought review in the state supreme court and then commenced the present action. Respondent moves to dismiss, arguing that the errors in petitioner's state court filings constituted procedural default of his due process claims. Petitioner responds that his errors should be excused because the inadequacy of the legal resources at DCI prevented him from discovering what papers needed to be included with his petition and what the correct filing fee was.

## II. STANDARD OF REVIEW

■ Rule 11 of the Rules Governing Section 2254 Cases permits federal courts to apply the Federal Rules of Civil Procedure to petitions for habeas corpus when appropriate. Under the Federal Rules of Civil Procedure, motions to dismiss for failure to state a claim upon which relief can be granted are analyzed under Rule 12(b)(6). Under Rule 12(b)(6), if matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment under Rule 56, and all parties must be given an opportunity to present any material pertinent to the motion. In the present case, both parties present material outside the pleadings, and respondent gave notice to petitioner that Rule 56 would apply. Therefore, I will apply summary

judgment standards. *See Teague v. Scott,* 60 F.3d 1167, 1169–70 (5th Cir.1995) (applying summary judgment standards in case brought under § 2254); *see also Taylor v. United States,* 287 F.3d 658, 661 (7th Cir.2002) (discussing use of "collateral-attack analog to summary judgment" in § 2255 case).

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), courts should act with caution in granting summary judgment, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, a court may not make credibility determinations or weigh the evidence. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir.2003). The court must construe the record and draw all reasonable inferences from it in a light most favorable to the nonmoving party. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## III. DISCUSSION

### A. Procedural Default

A federal court may entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court if he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). However, a federal court will not review a federal constitutional claim if the state court decided the case "on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Moore v. Bryant,* 295 F.3d 771, 774 (7th Cir.2002). The independent and adequate state ground doctrine bars federal habeas relief when the state court declined to address the prisoner's federal claims because the prisoner defaulted those claims by failing to meet a state procedural requirement. *Id.*

To preclude federal habeas review under this doctrine, the state court's decision must be both "independent" and "adequate" to support that court's judgment. *Thomas v. McCaughtry,* 201 F.3d 995, 1000 (7th Cir.2000). A state court's decision is "independent if that court actually ... relied on the procedural bar as an independent basis for its disposition of the case." *Id.* (internal quotation marks omitted). The last state court to render a judgment in the case must have clearly and expressly stated that its judgment rests on a state procedural bar. *Id.*

"A state court's finding of procedural default is an adequate ground that would preclude federal review only if the procedural rule applied by the state court is 'firmly established and regularly followed.'" *Id.* (quoting *James v. Kentucky,* 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)). The procedural rule must be applied by the state courts in a "consistent and principled way"; a rule that is "infrequently, unexpectedly, or freakishly" applied is not an adequate state ground that bars federal habeas review. *Id.* "Likewise, if a prisoner would not have been deemed to have been apprised of [the rule's] existence at the time

he omitted the procedural step, the state court's judgment is not an adequate ground that would bar federal habeas review." *Id.* (internal quotation marks omitted).[1]

However, the federal court may excuse a petitioner's procedural default and consider the merits of his claim if the petitioner can show "cause" for his failure and "prejudice" if the federal court refuses to review the claim, or that the federal court's failure to review the claim would result in a fundamental miscarriage of justice. *Howard v. O'Sullivan*, 185 F.3d 721, 726 (7th Cir.1999). In the present case, petitioner argues that his failure to comply with the state procedural rules governing the filing of his state court certiorari petition must be excused because he can show cause and prejudice.[2]

## B. Cause and Prejudice

### 1. Cause

"The Supreme Court has defined cause sufficient to excuse procedural default as 'some objective factor external to the defense' which precludes petitioner's ability to pursue his claim in state court." *Harris v. McAdory*, 334 F.3d 665, 668 (7th Cir. 2003) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Cause can be established "by showing interference by officials or that the factual or legal basis for a claim was not reasonably available." *Id.* Several

courts have recognized that, because one dimension of a prisoner's right to access the courts is the availability of an adequate prison law library, the unavailability of adequate legal resources can constitute cause. *See, e.g., Phillips v. Mills*, No. 98–5061, 1999 WL 685925, at *4 (6th Cir. Aug.25, 1999) (holding that prisoner's inability to access necessary legal materials established cause for procedural default); *Dulin v. Cook*, 957 F.2d 758, 760 (10th Cir.1992) (concluding that petitioner sufficiently alleges cause for procedural default when he claims that he had no reasonable access to pertinent legal resources); *see also McCoy v. Newsome*, 953 F.2d 1252, 1260–61 (11th Cir.1992) (assuming that lack of access to library could constitute cause and proceeding to analyze prejudice); *United States ex rel. Reyes v. Gramley*, No. 92–C–2742, 1994 U.S. Dist. LEXIS 3762, at *13 (N.D.Ill. Mar. 28, 1994) ("If petitioner was not provided access to materials that would have informed him of the shortening of the statute of limitations for bringing a petition for postconviction review, it might be possible to establish cause for procedural default.").

■ In the present case, petitioner presents an affidavit stating that the legal resources at DCI did not include a current edition of the Wisconsin Statutes or information concerning the required filing fee in a certiorari action and that, as a result, he was unable to discover the applicable rules.[3] Many of the requirements govern-

---

1. Petitioner does not argue that the procedural rule on which the state court relied was inadequate.

2. Petitioner also argues that failure to review the merits of the claim will result in a miscarriage of justice. However, he bases this argument on the same grounds as his cause and prejudice argument, and his contention is more appropriately considered under the cause and prejudice rubric.

3. Respondent argues that the state court already addressed and rejected petitioner's

claim that the inadequacy of legal resources at DCI excuses his failure to file a timely petition. However, the state court held that, as a matter of state law, the adequacy of the prison's law library was irrelevant to the application of the mailbox rule. This is an entirely different issue than whether, as a matter of federal law, the lack of adequate legal resources constitutes cause for overcoming a procedural default. In the cause context, I must consider whether the "facts and circumstances warrant relief from" state procedural rules. *Tyler*, 257 Wis.2d at 618, 652 N.W.2d

ing certiorari petitions are of recent vintage and first appeared in the 1997–98 statutes. *See, e.g.,* Wis. Stat. § 893.735 (imposing forty-five day limitation period); Wis. Stat. § 801.02(7)(c) (requiring that petition include certain administrative documents). Thus, if petitioner's assertions concerning his lack of access to a current edition of the statutes are true, a reasonable fact-finder might conclude that his default was due to "some objective factor external" to himself. *Murray,* 477 U.S. at 488, 106 S.Ct. 2639. As this case is before me on the § 2254 analog to summary judgment, I must assume that petitioner's assertions are true. Therefore, I cannot conclude as a matter of law that he lacked cause for his procedural default and will proceed to the prejudice inquiry.

### 2. Prejudice

#### a. The Concept of Prejudice and the Uncertainties Surrounding it

The concept of prejudice in the cause and prejudice context is surrounded by uncertainties. First, the Supreme Court has never clearly defined what prejudice means. 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 26.3c, at 1219 (4th ed.2001). The Court has said that a petitioner must show " 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions,' " *Ouska v. Cahill–Masching,* 246 F.3d 1036, 1050 (7th Cir.2001) (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)) (emphasis in original), but this formulation offers little guidance. Moreover, it is unclear what methodology courts are to employ in determining whether constitutional errors worked to a petitioner's actual and substantial disadvantage. Additionally, "the Court's decisions do not identify the standard by which the courts should determine whether the alleged error caused *enough* or the *right kind* of prejudice" *See* 2 Hertz & Liebman, *supra,* § 26.3c, at 1221.

#### i. Methodology for Determining Prejudice

With respect to methodology, it is unclear whether a court may assume that a defaulted claim is meritorious or must actually examine the merits of the claim. In the Sixth Circuit, courts assume that a petitioner's claim has merit and then determine whether the claimed error was prejudicial. *See Maupin v. Smith,* 785 F.2d 135, 139 (6th Cir.1986); *see also Moore v. Carlton,* 74 F.3d 689, 691–92 (6th Cir.1996). The Sixth Circuit justifies this approach on the ground that it serves the purpose of the procedural default doctrine by preventing federal courts from considering the merits of claims resolved by state courts on state procedural grounds. *Maupin,* 785 F.2d at 139.

Without explicitly acknowledging this methodology, several Seventh Circuit cases use the same approach as the Sixth Circuit and assume a meritorious claim. *See e.g., Ouska,* 246 F.3d at 1049–52. In *Ouska,* the court assumed that the petitioner's claim that the prosecutor improperly referred to her post-arrest silence was meritorious, but went on to hold that the petitioner failed to establish prejudice because there was "substantial other evidence of her guilt." *Id.* at 1050; *see also Moleterno v. Nelson,* 114 F.3d 629, 635–36 (7th Cir.1997) (finding that error was

---

800. Further, the state courts made no findings of fact concerning the adequacy of legal resources available at DCI. Thus, the state court's discussion is irrelevant to the issue before me.

harmless based on finding of state court without examining merits of claim).

However, at least one Supreme Court decision, as well as other Seventh Circuit cases, approach the issue of prejudice differently. In *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), in determining whether a petitioner had shown prejudice in connection with the procedural default of a *Brady* claim,[4] the Supreme Court did not assume that the claim was meritorious but rather analyzed its merits. The Court treated the prejudice inquiry as identical to the *Brady* materiality determination,[5] *id.* at 282, 119 S.Ct. 1936; *id.* at 297 n. 2, 119 S.Ct. 1936 (Souter, J., concurring in part and dissenting in part), and determined that petitioner had not established prejudice. If the Court had assumed that the claim had merit, it would have found prejudice because the Court's definition of prejudice made it, in effect, an element of the claim. Given the fact-intensive nature of the opinion in *Strickler*, it is unclear whether its methodology is applicable in cases where prejudice is not defined as being identical to an element of the claim. *See* 2 Hertz & Liebman, *supra*, § 26.3c, at 1219 n. 50.

Several Seventh Circuit cases also suggest that to determine prejudice courts must examine the merits of a defaulted claim. *See e.g., Belford v. United States*, 975 F.2d 310, 314 (7th Cir.1992), *overruled in part on other grounds by Castellanos v. United States*, 26 F.3d 717, 719–20 (7th Cir.1994) (stating that to establish prejudice, a petitioner must address the merits of his claim).[6] However, the *Belford* court said this in the course of analyzing whether a claim of ineffective assistance of counsel constituted cause for the procedural default of other claims, *id.* at 313–15; thus, the statement may not offer guidance in other contexts.[7] In *Moore v. Casperson*, 345 F.3d 474, 488–90 (7th Cir. 2003), the Seventh Circuit also considered the merits of procedurally defaulted sufficiency of the evidence and ineffective assistance claims in the course of determining prejudice. However, in *Moore*, the petitioner essentially asked the court to consider the merits by arguing that he could show prejudice because "the conten-

---

4. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (requiring prosecutors to disclose favorable evidence to a criminal defendant).

5. A *Brady* claim has three elements: (1) evidence favorable to the defendant must have been suppressed; (2) by the State; (3) resulting in prejudice. *Strickler*, 527 U.S. at 281–82, 119 S.Ct. 1936. The third element requires the defendant to show that there is a reasonable probability that the result of the trial would have been different had the evidence been disclosed to him. *Id.* at 289, 119 S.Ct. 1936.

6. *Belford* involved a federal prisoner who brought an action under 28 U.S.C. § 2255. However, the procedural default doctrine and the cause and prejudice exception apply to both § 2254 and § 2255 petitions. *See, e.g., U.S. ex rel. Williams v. Franzen*, 687 F.2d 944, 950 (7th Cir.1982); *see also Belford*, 975 F.2d at 313 n. 2 (holding that there was no reason to distinguish between the procedural default doctrine as it applied to § 2254 and § 2255 petitions).

7. The court noted that for ineffective assistance of counsel to constitute cause, a petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Belford*, 975 F.2d at 314. To satisfy *Strickland*, a petitioner must show: (1) deficient performance; and (2) a reasonable probability that, but for counsel's performance, the result would have been different (the prejudice prong). *Id.* The *Belford* court then indicated that the prejudice component of the cause and prejudice exception and the prejudice component of the *Strickland* test seemed to overlap. *Id.* The court noted that "[b]oth prejudice under *Strickland* and prejudice in the 'cause and prejudice' test, then, require the petitioner to address the merits of the claims in his section 2255 motion." *Id.*

tions that he omitted before the [state court] are meritorious." *Id.* at 486. It is unclear whether the court would have employed the same approach in the absence of this argument.

As the foregoing cases indicate, in determining whether prejudice exists, courts sometimes look at the merits of a procedurally defaulted claim, and sometimes they do not. No single approach prevails and no coherent rationale has been offered for either approach. It may make sense, given the purpose of the procedural default doctrine, for courts to assume a meritorious claim in most cases and then go on to determine whether the error identified in the claim caused prejudice. However, in cases such as *Strickler*, where prejudice is defined as being identical to one of elements of the defaulted claim, to assume that a claim is meritorious would be to assume prejudice. Thus, in such cases, courts do not assume that a claim is meritorious but rather examine the merits of the claim. Yet, it seems both unfair and irrational to determine prejudice differently—granting merits review to some litigants but not others—depending on the nature of the procedurally defaulted claim.

### ii. Standard for Measuring Prejudice

It is also uncertain what standard is appropriate to decide whether a petitioner has shown "enough" or the "right kind" of prejudice. *See* 2 Hertz & Liebman, *supra*,

§ 26.3c, at 1220–21. Several possible standards have been suggested. 2 *id.* at 1221–23 (listing standards). The Seventh Circuit has used several standards, one of which is a "harmless error" standard.[8] *See Moleterno,* 114 F.3d at 635–36 (holding that prejudice was not shown because error was harmless and outcome of trial would not have been different). The Seventh Circuit has also suggested that the definition of prejudice for procedural default purposes may be the same as in the ineffective assistance of counsel context. *See, e.g., Ouska,* 246 F.3d at 1050 n. 13 (noting the "continued ambiguity" as to whether prejudice is the same in both contexts, but suggesting that to overcome default petitioner must show that but for error there is a reasonable probability that result would have been different); *Belford,* 975 F.2d at 314 ("Although there remains some debate as to whether 'prejudice' under *Strickland* and 'prejudice' under the cause and prejudice standard are identical," court proceeded to analyze claim under *Strickland* standard).

### iii. Is Prejudice Requirement Necessary?

The uncertainty and complexity concerning how to determine and how to measure prejudice raise a more fundamental question—whether the prejudice component of the cause and prejudice formulation serves a useful purpose. Although there are potential differences between the prejudice standard and the harmless error standard applicable to the merits of habeas claims,[9]

8. In the habeas context, an error is harmless unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

9. Depending on how it is defined, the prejudice requirement could differ from the harmless error standard in at least two ways. First, it could be either a stricter or more

lenient standard. Second, it could operate to shift the burden from the state, which appears to have the burden of showing that an error was harmless, *see* 2 Hertz & Liebman, *supra,* § 31.2b, at 1375–76, to the petitioner, who must demonstrate prejudice, 2 *id.* § 26.3c, at 1225. But the second point is not completely clear. In *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710, the Court said that "habeas petitioners ... are not entitled to habeas relief based on trial error unless *they can establish* that it resulted in 'actual prejudice.'" (emphasis added). This suggests that habeas petitioners

the requirement that a court determine prejudice when there has been a procedural default seems only to force the court to engage in harmless error analysis at the procedural default stage. *See Wainwright v. Sykes,* 433 U.S. 72, 97–99, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (White, J., concurring) (noting that prejudice requirement appears to be nothing more than harmless error analysis); *id.* at 117, 97 S.Ct. 2497 (Brennan, J., dissenting) (same); *see also* 2 Hertz & Liebman, *supra,* § 26.3c, at 1225 (equating prejudice standard with harmless error standard). The potential differences between the prejudice requirement and the harmless error standard applicable to the merits of a habeas petition are, at most, negligible. Such differences would largely be semantic and, in all likelihood, it would be impossible to coherently distinguish between the standards. *See* Larry

W. Yackle, *Postconviction Remedies* § 87, at 295 (Supp.2002) (noting that it is impossible to "distinguish cleanly" between the prejudice standard and the harmless error standard).

To the extent that there *are* differences between the two standards, application of a stricter [10] standard to a petitioner who has shown cause would be fundamentally unfair. If a petitioner has shown cause, his default was, by definition, the result of factors beyond his control. *See Murray,* 477 U.S. at 488, 106 S.Ct. 2639 (holding that petitioner must show that some objective factor external to the defense caused default). Thus, he should be able to obtain habeas review on the same terms as a petitioner who has not been subjected to external interference.[11]

Further, the prejudice standard would be useless if it were less stringent than the

bear the burden of showing harmful error. In *O'Neal v. McAninch,* 513 U.S. 432, 438–39, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995), the Court suggested that this language from *Brecht* was not the law. At one point, the Court suggested that a judge considering whether an error was harmless should not think in term of burdens but rather should "ask directly, 'Do I, the judge, think that the error substantially influenced the jury's decision?'" *Id.* at 436, 115 S.Ct. 992. Later, the Court suggested that the burden remained on the state to demonstrate that the error was harmless. *Id.* at 439, 115 S.Ct. 992. Nevertheless, in *Penry v. Johnson,* the Court again spoke in terms of the petitioner's burden to show that the error had a substantial and injurious effect. 532 U.S. 782, 795, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) ("We think it unlikely that Penry [the petitioner] could make such a showing."). The Seventh Circuit has also referred to the petitioner's burden to show harmful error. *See, e.g., Lowery v. Anderson,* 225 F.3d 833, 841 (7th Cir.2000) ("We find that Lowery has not met that burden [under *Brecht*.]").

**10.** I use the term "stricter" in the sense that it is more difficult for a petitioner to obtain relief under a "stricter" standard of harmless error.

**11.** As Justice White explained in *Sykes:* "As long as there is acceptable cause for the defendant's not objecting to the evidence, there should not be shifted to him the burden of proving specific prejudice to the satisfaction of the habeas corpus judge." 433 U.S. at 98, 97 S.Ct. 2497 (White, J., concurring). Further, to the extent that applying a stricter standard to the prejudice determination than to the harmless error determination may be justified as promoting the interests of finality, comity and federalism, these interests are already adequately promoted by the harmless error standard applied to habeas cases. *See id.* ("In terms of the necessity for Sykes to show prejudice, it seems to me that the harmless-error rule provides ample protection to the State's interest."). In *Brecht,* the Court held that the harmless error standard that applies to cases on direct review ("beyond a reasonable doubt") should not apply in habeas cases because applying a more permissive standard of harmless error to habeas cases promotes "the State's interest in the finality of convictions that have survived direct review within the state court system" and the interests of "comity and federalism." 507 U.S. at 635, 113 S.Ct. 1710. Thus, these interests do not need the additional layer of protection that a strict prejudice standard would provide.

*Brecht* harmless error standard. If a court determined that a petitioner had shown prejudice under the less-stringent standard, it would still have to consider the merits of his claims and, unless the state waived the harmless error defense,[12] determine whether any constitutional error was harmless. It is hard to see any point in requiring courts to consider a petitioner's claims twice under these two, nearly identical standards.[13]

Thus, requiring a petitioner who has shown cause to also show prejudice to overcome a procedural default adds an additional, and seemingly arbitrary, hurdle to obtaining habeas relief and an additional layer of complexity to the process. As Justice Breyer has noted, the current complexity of the Court's habeas corpus jurisprudence can, in practice, "deny the fundamental constitutional protection that habeas corpus seeks to assure." *Edwards v. Carpenter*, 529 U.S. 446, 454, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000) (Breyer, J., concurring). Unless it can be shown that the requirement of showing prejudice in the procedural default context clearly serves some legitimate interest, consideration should be given to abandoning it.

Nevertheless, I am not free to do so. I must determine whether there is prejudice in the present case. To do so, I will define prejudice synonymously with the *Brecht* harmless error standard: as indicated above, this standard is the most efficient and equitable. *Cf. Aleman*, 320 F.3d at 691(stating that habeas court may generally take up issues in manner and sequence that seems best). Further, in accord with

*Strickler*, I will not assume that petitioner's claims are meritorious but instead examine their merit. If such claims are meritorious and the resulting constitutional violations are not harmless, petitioner will have shown prejudice sufficient to overcome his procedural default.

**b. Whether Petitioner Suffered Prejudice**

In the present case, petitioner claims that he was denied due process during the prison disciplinary process because: (1) prison officials did not follow their own procedures; (2) he was not allowed to confront his accuser; (3) the prison did not produce witnesses that he requested; (4) he was not given an opportunity to refute the allegations against him; (5) he did not receive assistance from the inmate advocate; (6) the prison disciplinary committee was not impartial; and (7) its decision was not based on sufficient evidence.

In the prison disciplinary context, the process a prisoner is due is limited. He need only receive written notice of the charges, an opportunity to present evidence to an impartial decision-maker, and a written explanation for the discipline that is supported by "some evidence." *Piggie v. Cotton*, 342 F.3d 660, 662 (7th Cir.2003). Prisoners have no due process right to confront adverse witnesses, *id.* at 666, and, unless they are illiterate or the complexity of the issues makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case, no due

---

**12.** The state may waive the harmless error defense. *See, e.g., Holland v. McGinnis*, 963 F.2d 1044, 1057–58 (7th Cir.1992).

**13.** In *Aleman v. Sternes*, 320 F.3d 687, 690–91 (7th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 2653, 156 L.Ed.2d 659 (2003), the court discussed whether a habeas court should first consider whether the state court unreason-ably applied the *Chapman* harmless error standard applicable on direct review ("beyond a reasonable doubt"), then proceed to the *Brecht* harmless error standard applicable on habeas review, or simply apply *Brecht* and be done with it. The Seventh Circuit said that generally the court may take up the issues in whatever manner seems best.

process right to the assistance of a lay advocate, *Miller v. Duckworth,* 963 F.2d 1002, 1004 (7th Cir.1992).

■ It is unclear what petitioner means when he alleges that prison officials failed to "follow their own procedures." (Pet. ¶ 22B.) However, even construing this claim liberally, it fails to state a claim upon which habeas relief could be granted. *See Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (holding that federal habeas relief may not be granted based on errors of state law). Petitioner's claim that he was unable to confront his accuser also fails as a matter of law. *Piggie,* 342 F.3d at 666.

■ I am unable to determine from the face of the petition whether the nature of the hearing was such that an inmate advocate should have been assigned to assist petitioner. Thus, I cannot rule on this claim as a matter of law. Petitioner's remaining allegations pertaining to: (1) the denial of his right to call witnesses; (2) the denial of his right to present evidence and refute the allegations before an impartial decision-maker; and (3) the denial of his right to a decision supported by "some evidence" state viable due process claims.

Because of the procedural posture of this case, neither party has addressed the merits of these claims. Therefore, I am unable to determine whether petitioner can show prejudice on the present record. I will thus afford the parties an opportunity to brief these issues.

## IV. CONCLUSION

**THEREFORE, IT IS ORDERED** that respondent's motion to dismiss is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that the following briefing schedule shall apply: (1) petitioner shall have 45 days from the date of this Order to file his brief in support of his petition; (2) respondent shall have 45 days following the filing of petitioner's ini-

tial brief within which to file a brief in opposition; and (3) petitioner shall have 30 days following the filing of respondent's opposition brief within which to file a reply brief, if any. The parties shall address the merits of petitioner's claims and whether any errors established were harmful/prejudicial.

If petitioner is able to establish prejudice based on the merits of his claims, I will consider the taking of additional evidence or scheduling of an evidentiary hearing pertaining to the "cause" issue. If petitioner is unable to establish prejudice the case will be dismissed.